HAROLD G. BECKS (SBN 59126)
VALORIE FERROUILLET (SBN 217249)
3250 Wilshire Blvd., Suite 708
Los Angeles, California 90010
Telephone:  (213) 385-9852
Fax:  (213) 385-1374
E-mail:  hbecks@beckslaw.com
E-mail: vyarbrough@beckslaw.com

Attorneys for Defendants, COUNTY OF
LOS ANGELES and LEROY D. BACA

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LLOYD JOSEPH COLLINS,<br><br>            Plaintiff,<br><br>        v.<br><br>STATE OF CALIFORNIA, CALIFORNIA HIGHWAY PATROL (CHP); CHP COMMISSIONER JOSEPH A. FARROW, INDIVIDUALLY; CHP OFFICER DANIEL J . RINGWELSKI [#019101], INDIVIDUALLY; COUNTY OF LOS ANGELES; FORMER LOS ANGELES COUNTY SHERIFF LEROY D. BACA, BOTH INDIVIDUALLY AND IN HIS FORMER OFFICIAL CAPACITY, AND DOES 1-25, INCLUSIVE,<br><br>            Defendants. | **Case No. 2:15-CV-00710-FFM**<br><br>**[Assigned to the Hon. FrederickF. Mumm, Courtroom E – 9th Floor]**<br><br>**SUPPLEMENTAL BRIEF BY DEFENDANT COUNTY OF LOS ANGELES IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**<br><br>**Complaint served:  January 5, 2015**<br><br>**Date:        October 27, 2015**<br>**Time:        10:00 a.m.**<br>**Ctrm:        E**<br><br>**[Filed Concurrently with Declaration of Valorie Ferrouillet, Exhibits A-G; Declaration of Andrea Gonzalez]** |

Defendants COUNTY OF LOS ANGELES and LEROY D. BACA hereby submit this supplemental brief in opposition to plaintiff's Motion to Compel.

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## A.    Introduction.

Plaintiff alleges that he was arrested and detained on October 18, 2013 for a misdemeanor under Penal Code § 148, Resisting, Delaying or Obstructing an Officer.  Plaintiff claims that while he was being processed at the Los Angeles County Men's Central Jail Inmate Reception Center ("IRC"), in violation of his civil rights, he was not provided a bunk and was not given access to medication.  In particular, plaintiff contends that defendants violated injunctions first enumerated in *Rutherford v. Block* (1978)  457 F. Supp.  104, that every inmate kept overnight be accorded a mattress or bunk upon which to sleep.

Under Penal Code § 853.6, misdemeanors such  violation of Penal Code § 148 are subject to citation and release within 24 hours.   Plaintiff's own allegations indicate that plaintiff was processed at the Men's Central Jail Inmate Reception Center ("IRC") over approximately 21 hours, was cited and then released.  Several months after his release, plaintiff successfully petitioned the Superior Court to seal his arrest records.

Plaintiff's Request for Production of Documents, Set One, seeks documents that support his claim that he was not provided a bunk and that he was not provided "timely" access to medical care while he was being processed on this occasion.  More importantly, in support of plaintiff's *Monell* claim, plaintiff also seeks a large volume of documentation spanning from 2008 to the present concerning inmate complaints, **including non-temporary inmates housed at Men's Central Jail,** with complaints that they were not provided housing or "timely medical care."

## A.    Defendant Cannot Produce Records Pertaining to Plaintiff Due to the Court Order Sealing His Records.

Plaintiff also claims that defendants negligently failed to provide timely medical care to plaintiff.   Yet plaintiff steadfastly refused to unseal his arrest

**SUPPLEMENTAL BRIEF OF DEFENDANT COLA IN OPP. TO PLTFS MOTION TO COMPEL**

records which contain his plaintiff's medical treatment records.  At the same time, plaintiff inexplicably and unreasonably demands that defendant violate the  Court-ordered seal initiated by him and produce the records pertaining to his arrest and medical treatment at the time of his arrest.

In August 2015, during the in-person meeting and conference with opposing counsel regarding plaintiff's proposed Motion to Compel, defense counsel advised plaintiff's counsel that all documents pertaining to plaintiff's detention could and would be produced after the Court-ordered seal was removed and plaintiff's records were made available.  Defense counsel proposed postponing plaintiff's motion to compel until the records were unsealed as a number of plaintiff's document requests could then be answered without court intervention.  The parties agreed to enter into a stipulation drafted by plaintiff's counsel for signature by the court.  After defense counsel signed the stipulation, it was not filed until October 20, 2015.

**B.**     **Aside from the Burdensome and Oppressive Nature of Plaintiff's Document Requests Concerning Inmates Complaints About Bedding and Medical Care, Inmate Reception Center is Not Subject to the Requirement to Furnish a Bed to Arrestees Being Processed and Released over Less Than 24 Hours.**

In response to the overcrowding issues afflicting Men's Central Jail, this Court issued orders in *Rutherford v.  Pitchess, et al.,* aimed at stemming jail overcrowding at Men's Central Jail.   In particular, the Court ruled, "Every prisoner kept overnight in the jail will be accorded a mattress and a bed or bunk upon which to sleep." (Ex. A and B, Judgment filed February 15, 1979, p. 2., Memorandum of Understanding p. 4, ln., 2-9.)  The judgment and memorandum do not appear to differentiate between the population at Men's Central Jail and arrestees being processed through the Inmate Reception Center.

On May 9, 1986, this Court approved a stipulation differentiating for the first time the **non-temporary population at the Men's Central Jail,** by setting forth

SUPPLEMENTAL BRIEF OF DEFENDANT COLA IN OPP. TO PLTFS MOTION TO COMPEL

1  5800 inmates as the maximum non-temporary inmate population in an effort to

2  eradicate "freeway" or floor sleepers. (Ex. C, p. 2, ln. 17-p. 3, ln. 14.)  The

3  stipulation also addressed "short-term housing of inmates" who were "entering the

4  County jail system or for some reason [were] subject to housing changes."  Note

5  that this document does not require that arrestees being processed for citation and

6  released through IRC over less than 24 hours be provided a mattress and a bunk.

7       On or about May 24, 1988, the Court approved the implementation of an

8  interim Jail Management Plan to address overcrowding over the time frame during

9  which additional new jails facilities were being constructed to house the ever-

10  increasing non-temporary inmate population:

11        ". . . [T]o ensure that available space is utilized for the most

12  serious offenders until additional jail capacity is available, or until the
      jail population is reduced below capacity, the Sheriff shall manage the

13  inmate population so that no facility exceeds **the maximum
      permanent inmate capacity previously approved by the Court.**

14  When the inmate population at any facility exceeds those limits, **the
      Sheriff shall manage the jail system within those capacities by**

15  **discharging or citing inmates to court upon a written promise to
      appear, according to the priorities that he shall establish:**

16

17        **1.    Unsentenced defendants with bail of $2,500.00 or**
      **less."  (Ex. D, p. 2, ln. 11 - 21.)  (Emphasis added.)**

18                           ***

19  As specifically set forth by the Court, the order addressed the non-temporary

20  arrestees being cited and released for misdemeanors.

21       On November 18, 2005, the Court approved a Stipulation and Order re

22  Injunction setting forth modifications to the *Rutherford* injunction (none of which

23  orders materially affect this litigation). (Ex. E.)  However, the Order reiterates the

24  requirement that every inmate kept overnight in jail be accorded a mattress and

25  bunk upon which to sleep. (Ex. E, p. 1, ln. 22.)  Bunks were to be supplied with

26  full "bedding" as that term is defined by Title 15 § 1270.

27       On October 27, 2006, this Court issued an Order to Show Cause re Issuance

28

SUPPLEMENTAL BRIEF OF DEFENDANT COLA IN OPP. TO PLTFS MOTION TO COMPEL

1    of a Preliminary Injunction and Temporary Restraining Order for the alleged failure

2    by LASD to comply with the *Rutherford* orders. ("OSC"). (Ex. 3.) **For the first**

3    **time, and unlike prior orders issued in the *Rutherford* case, this OSC**

4    **specifically identified issues of overcrowding at IRC.** After first reiterating the

5    general order that the LASD provide beds to inmates staying overnight at MCJ,

6    nowhere does the order require that temporary inmates being processed for

7    immediate release be provided a mattress and a bunk. In an illuminating

8    exposition, the Court set the backdrop and purpose for this order.

9

10          "The Court has toured the Men's Central Jail ("MCJ") on two
         occasions. During the first tour on May 10, 2006, there was clear

11   evidence of overcrowding... (Ex. D, OSC p. 2, lns. 1-3)...

12   The Court went on a second tour on September 14, 2006. During the
         tour, significant progress had been made in addressing many of the

13   issues that arose during the first tour.... (OSC p. 2, lns. 21-23).

14   **The genesis of the present hearing is that, as a result of the**

15   **lessening of the overcrowding issues at MCJ, more and more**
         **inmates were backed up into the facility that feeds that MCJ, the**

16   **Inmate Reception Center ("IRC"). (OSC p. 3, lns. 1-4.)**
         **(Emphasis added.)**

17

18   ... Having noted the above, the Court believes that immediate steps
         should be taken by the Sheriff's Department to address the issues

19   raised by plaintiff. Therefore the Court issues the following order.
         (OSC p. 7, ln. 6 – p. 8, ln. 20.)"

20

21          In its October 27, 2006 order, this Court ordered that no inmate could

22   be held in IRC for more than 24 hours, set a maximum limit of 20 IRC

23   inmates per cell, require IRC inmates be provided a clean cell with access to

24   a toilet and drinking water, and be provided access to medical care. **The**

25   **Order does not require that inmates in IRC be provided with a bunk on**

26   **which to sleep.**

27         The implication of the Court's order is clear. **Overcrowding in IRC as a**

28   **result of implementation of the *Rutherford* orders to the non-temporary jail**

---

5

1    **population at MCJ became the issue after the Court's tour of the jail in**

2    **September 2006.  Prior to that, no order by this Court referenced IRC or a**

3    **requirement to furnish arrestees being processed for citation and release over**

4    **a span of less than 24 hours with mattresses and bunks.**

5          Subsequent orders dated January 26, 2007 and April 7, 2007 each referring to

6    orders set forth at the October 26, 2006 OSC, recited the same preamble, "This

7    Order merely renews the preliminary injunction already in place."  (Ex. F and G.)

8    Once again, although the Court could have ordered IRC to provide beds to arrestees

9    being processed over less than 24 hours through IRC if it so intended, it did not.

10          It is defendant's understanding of the law that as a Type I facility and under

11    Title 15 § 1006, and while processing temporary inmates, that the District Court's

12    orders regarding providing bunks to inmates, which plaintiff claims were violated

13    by defendant Los Angeles County Sheriff's Department, and which plaintiff claims

14    resulted in the deprivation of his constitutional rights, simply do not apply to the

15    Men's Central Jail IRC.  Therefore, the vast majority of plaintiff's document

16    demands are irrelevant, burdensome and oppressive.

17

18                                    Respectfully submitted,

19                                    **HAROLD G. BECKS & ASSOCIATES**

20

21

22    Dated:  October 26, 2015          By:   /s/ Valorie Ferrouillet
                                              Harold G. Becks
23                                            Valorie Yarbrough Ferrouillet
                                              Attorneys for Defendants, COUNTY
24                                            OF LOS ANGELES, and LEROY
25                                            D. BACA

26

27

28

---

6

# DECLARATION OF VALORIE FERROUILLET

1.    I am an attorney admitted to practice before this Court.  I am an associate in the law firm of Harold G. Becks & Associates, counsel of record for Defendants herein, County of Los Angeles and Leroy D. Baca.  The following facts and circumstances are personally known to me, and if called upon to do so, I could and would competently testify as to them.

2.    Attached here to as Exhibits A and B are true and correct copies of the Judgment filed in *Rutherford v. Pitchess* on February 15, 1979,  and the Memorandum of Understanding filed on November 13, 1985.

3.    Attached hereto as Exhibit C is a true and correct copy of the May 9, 1986, this Court approved stipulation differentiating for the first time the **non-temporary population at the Men's Central Jail,** by setting forth 5800 inmates as the maximum non-temporary inmates population in an effort to eradicate "freeway" or floor sleepers, but which does not require that arrestees being processed for citation and released through IRC over less than 24 hours be provided a mattress and a bunk.

4.    Attached hereto as Exhibit D is a true and correct copy of the May 24, 1988, the Court order approving implementation of an interim Jail Management Plan to address overcrowding issues with respect to non-temporary inmates while new jails facilities were being constructed.

5.    Attached hereto as Exhibit E is a true and correct copy of the November 18, 2005 Stipulation and Order re Injunction setting forth modifications to the *Rutherford* injunction (none of which orders materially affect this litigation). (Ex. E.)

6.    Attached hereto as Exhibit F is a true and correct copy of the October 27, 2006, Order to Show Cause re Issuance of a Preliminary Injunction and Temporary Restraining Order for the alleged failure by LASD to comply with the

SUPPLEMENTAL BRIEF OF DEFENDANT COLA IN OPP. TO PLTFS MOTION TO COMPEL

1  *Rutherford* orders. ("OSC"). (Ex. 3.) **For the first time, and unlike prior orders**

2  **issued in the *Rutherford* case, this OSC specifically identified issues of**

3  **overcrowding at IRC and set forth that** no inmate could be held in IRC for more

4  than 24 hours, set a maximum limit of 20 IRC inmates per cell, require IRC inmates

5  be provided a clean cell with access to a toilet and drinking water, and be provided

6  access to medical care. **The Order does not require that inmates in IRC be**

7  **provided with a bunk on which to sleep.**

8      7.      Attached hereto as Exhibits G and H are subsequent orders dated

9  January 26, 2007 and April 7, 2007 each referring to orders set forth at the October

10  26, 2006 OSC, recited the same preamble, "This Order merely renews the

11  preliminary injunction already in place." (Ex. F and G.)  Once again, although the

12  Court could have ordered IRC to provide beds to arrestees being processed over

13  less than 24 hours through IRC if it so intended, it did not.

14

15      I declare under penalty of perjury that the foregoing is true and correct.

16  Executed this __ day of October 2015, at Los Angeles, California.

17

18

19                                             /s/      Valorie Ferrouillet

20                                             Valorie Ferrouillet, Declarant

21

22

23

24

25

26

27

28

SUPPLEMENTAL BRIEF OF DEFENDANT COLA IN OPP. TO PLTFS MOTION TO COMPEL